UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BERNHARD GASS, Individually and as Co-
Administrator of the Estate of Walter Gass,
ELENA GASS, and CLAUDIA ZIEGLER,

                        Plaintiffs,

         – against –

IRINA MAMEDOVA-BRAZ, ILYA BRAZ, 191
SPRING LLC, and REDEMA REAL ESTATE
DEVELOPMENT LLC,

                        Defendants.

**OPINION AND ORDER**

15 Civ. 3799 (ER)

Ramos, D.J.:

      This diversity action centers on a dispute over title to two parcels of real property in Brooklyn and Manhattan, New York. The parties have filed cross-motions for summary judgment. Docs. 41, 42. For the reasons stated below, Plaintiffs' motion is GRANTED in part and DENIED in part and Defendants' motion is GRANTED in part and DENIED in part.

## I.    FACTUAL BACKGROUND

      The following facts are undisputed except where otherwise noted.

      Walter Gass ("the Decedent") owned in whole or in part two investment properties in Brooklyn and Manhattan (the "Brooklyn Property" and the "Manhattan Property," and together, the "Subject Properties") until shortly before his death in September 2014. Plaintiffs Bernhard Gass, Elena Gass, and Claudia Ziegler (collectively, "Plaintiffs") were his three children and sole heirs. Defendants' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Defs.' R. 56.1") (Doc. 45) ¶ 1; Plaintiffs' Local Rule 56.1(A) Statement of Material Facts ("Pls.' R. 56.1") (Doc. 46) ¶ 4. The Decedent was an Austrian citizen and resided and died in Vienna, Austria. Pls.' R. 56.1 ¶ 3.

Defendants are Irina Mamedova-Braz ("Mamedova-Braz"), Ilya Braz ("I. Braz"), Redema Real Estate Development LLC ("Redema"), and 191 Spring LLC ("191 Spring") (collectively "Defendants"). Defs.' R. 56.1 ¶¶ 5–8. Mamedova-Braz is a United States citizen and resides in Brooklyn, New York. Pls.' R. 56.1 ¶ 6. The parties dispute the precise nature of Mamedova-Braz's relationship with the Decedent. Defendants assert that Mamedova-Braz was the "loving companion" of the Decedent for the twenty five years prior to his death and that she and Decedent held themselves out to be husband and wife for nearly three decades. Defs.' R. 56.1 ¶ 9; Defendants-Counterclaim Plaintiffs' Counterstatement of Material Facts ("Defs.' Cntr. R. 56.1") (Doc. 53) ¶ 16. Plaintiffs assert that the Decedent rarely saw Mamedova-Braz for the last 15 years of his life because he lived in Vienna while she lived in New York City. Plaintiffs' Local Rule 56.1 Counter-Statement of Material Facts ("Pls.' Cntr. R. 56.1") (Doc. 56) ¶¶ 9–10. Regardless, it is undisputed that Mamedova-Braz and the Decedent met in 1987 and had some form of personal relationship, but were never married. Defs.' R. 56.1 ¶ 10; Pls.' R. 56.1 ¶ 16. The couple resided together for periods of time throughout their relationship in both Vienna and New York. Defs.' Cntr. R. 56.1 ¶ 17.

Currently, Mamedova-Braz is a member and sole owner of both Redema and 191 Spring, two New York limited liability companies. Defs.' R. 56.1 ¶¶ 8–9; Pls.' R. 56.1 ¶¶ 9, 11. I. Braz is Mamedova-Braz's nephew, and is a licensed New York attorney who advised both the Decedent and Mamedova-Braz in relation to the creation of a power of attorney ("POA") and conveyances related to the Subject Properties. Defs.' Cntr. R. 56.1 ¶¶ 7, 29.

On October 29, 1998, the Decedent appointed Mamedova-Braz to be his attorney-in-fact in a power of attorney ("the 1998 POA") relating to the purchase of real property at 191 Spring Street, Manhattan. Pls.' Cntr. R. 56.1 ¶ 13. On February 24, 1999, the Decedent purchased the

Manhattan Property for $1,275,000. Defs.' R. 56.1 ¶ 14. It was purchased with the Decedent's own funds and title was held solely in his name for 15 years from 1999 to 2014. *Id.* ¶¶ 14–15. During that time, Mamedova-Braz managed the Manhattan Property through Redema Real Estate Development & Management Co., Inc. ("Redema Management").[1] Pls.' R. 56.1 ¶ 53.

On May 27, 2004, Mamedova-Braz purchased the Brooklyn Property, which was a vacant parcel of land located at 2571 East 17th Street. Defs.' R. 56.1 ¶ 20. The parties dispute whether Mamedova-Braz purchased the Brooklyn Property entirely with her own funds. *See* Pls.' Cntr. R. 56.1 ¶¶ 20–21. However, it is undisputed that when Mamedova-Braz acquired the Brooklyn Property, it was understood that the Decedent would be providing the funds to construct a building thereon. Pls.' R. 56.1 ¶ 31. The construction costs for the Brooklyn Property were approximately $1,000,000. *Id.* ¶ 32. The parties dispute the exact level of financing that Decedent provided for construction at the Brooklyn Property, but it is undisputed that the Decedent personally financed at least $500,000 of the construction costs. *Id.*[2] Mamedova-Braz also managed the Brooklyn Property through Redema Management. Pls.' R. 56.1 ¶ 53.

On June 3, 2004, the Decedent appointed Mamedova-Braz to be his attorney-in-fact through a power of attorney for "general, real estate & bank business" (the "2004 POA"). Pls.' Cntr. R. 56.1 ¶ 18; Declaration of Stephen B. Meister ("Meister Decl.") (Doc. 44) Ex. 17. No party alleges that any disputed transfer in this action was facilitated using the 2004 POA. *See* Pls.' Cntr. R. 56.1 ¶ 7.

---

[1] Redema Management is a distinct entity from Defendant Redema Real Estate Development LLC. Redema Management has been a New York domestic business corporation since June 25, 1999. Pls.' R. 56.1 ¶ 56. Mamedova-Braz is the President and sole owner of Redema Management. *Id.* ¶ 57.

[2] Defendants contend that the remaining costs were financed by the rent collected from the Manhattan Property, whereas Plaintiffs contend the Decedent financed the entire construction costs. *Id.*

On June 23, 2004, one month after purchasing the Brooklyn Property, Mamedova-Braz signed a bargain and sale deed[3] transferring a 50% interest in the Brooklyn Property to Decedent. Doc. 44-14 ("2004 Brooklyn Deed of Conveyance"). The deed did not specify whether a joint ownership or tenancy in common was created or whether a right of survival applied to the property. *See id.* The parties now dispute the legal effect of this conveyance.[4]

In May 2013, the Decedent was diagnosed with cancer and underwent a course of chemotherapy in June and July of that year. Declaration of Nancy J. Rudolph ("Rudolph Decl.") (Doc. 47) Ex. 8 at 13:8–14; 100:25–101:4. On August 2, 2013, in Vienna, the Decedent executed a "Power Of Attorney New York Statutory Short Form"[5] authorizing Mamedova-Braz to act as his "agent" regarding, *inter alia*, real estate transactions (the "2013 POA"). Pls.' R. 56.1 ¶ 20; Meister Decl. Ex. 19.[6]

The majority of the key events in this case took place during the six months prior to Decedent's death and involve transactions undertaken by Mamedova-Braz under the authority of the 2013 POA. On March 31, 2014, the articles of organization for 191 Spring LLC were filed

---

[3] New York Real Property Law provides that deeds of bargain and sale may be used to convey real property. § 24:4. Kinds of deeds, 1 N.Y. Law & Practice of Real Property § 24:4 (2d ed.). The bargain and sale deed is one of the "most commonly used deeds." § 4:20.Closing documents—The deed—Types of deeds—The bargain and sale deed with covenant, Legal Almanac: Home Mortgage Law Primer § 4:20.

[4] It is undisputed that whatever interest Decedent had in the property remained in his name until 2014, when his interest was transferred to Redema. *See* Defs.' Cntr. R. 56.1 ¶ 33.

[5] When questioned why a new power of attorney was executed, Mamedova-Braz testified that she was told by someone, whom she cannot remember, that a new power of attorney form had to be used, and that her lawyer, I. Braz provided an updated power of attorney form to execute at the Austrian consulate. Rudolph Decl. Ex. 8 at 9:22–10:15.

[6] For purposes of the instant motion only, Plaintiffs concede that the power of attorney was valid. *See* Doc. 48 at 12 ("Although the defendants were unable to produce for inspection any originals, the plaintiffs will assume, *for purposes of this motion only*, that the POA was valid—i.e., that the Decedent's signature, where it appears, is authentic and was properly acknowledged and that the Decedent had capacity and was not subject to undue influence, fraud, or duress at the time he signed it.") (emphasis in original). However, the parties dispute the scope of authority granted to Mamedova-Braz in the 2013 POA, including whether her actions under the POA constitute improper self-dealing. *See* Pls.' Cntr. R. 56.1 ¶¶ 30-31.

with the New York State Department of State, Division of Corporations.  Pls.' R. 56.1 ¶ 21.

That same day, Mamedova-Braz, acting as Decedent's agent pursuant to the 2013 POA, signed a

bargain and sale deed, acknowledged by her nephew and attorney, I. Braz, which purported to

convey Decedent's 100% interest in the Manhattan Property to Defendant 191 Spring LLC (the

"Manhattan Deed").  *Id.* ¶ 41; Meister Decl. Ex. 21.  The legality of this transfer is contested by

the parties.  The Manhattan Deed transferred the Manhattan Property to 191 Spring for "Ten

Dollars ($10) and other valuable consideration."  Meister Decl. Ex. 21 at G000158.  However,

according to the Form TP-584 "Combined Real Estate Transfer Tax Return" from the New York

State Department of Taxation and Finance[7] that was signed by Mamedova-Braz on January 22,

2015, as both grantor and grantee, there was "no consideration" and "0.00 consideration" for the

Manhattan Property Conveyance.  Rudolph Decl. Ex. 20 at Plaintiff_00441; Pls.' R. 56.1 ¶ 44.

Moreover, according to the Form RP-5217NYC "Real Property Transfer Report" from the State

of New York, State Board of Real Property Services[8] that was signed by Mamedova-Braz on the

same day, the "full sale price" for the Manhattan Property Conveyance was $0.00.  Rudolph

Decl. Ex. 21 at Plaintiff_00421; Pls.' R. 56.1 ¶ 45.  The Manhattan Deed was not recorded or

filed in the Office of the City Register of the City of New York until March 10, 2015—almost

one year after the transfer of the property to 191 Spring.  Meister Decl. Ex. 21.  Memodova-Braz

---

[7] "New York State imposes a real estate transfer tax on conveyances of real property or interests therein when the consideration exceeds $500."  https://www.tax.ny.gov/bus/transfer/rptidx.htm.  The tax is paid by the grantor; however, if the grantor doesn't pay the tax, or is exempt from the tax, the grantee must pay the tax.  *Id.*  Form TP-584 must be filed with the county clerk where the real property being transferred is located no later than the 15th day after the delivery of the deed or similar legal document.  *Id.*

[8] "The RP-5217NYC Real Property Transfer Report is a form . . . used to document the information associated with all real property transfers within New York City."  http://www1.nyc.gov/assets/finance/downloads/pdf/02pdf/rp5217nyci.pdf.  The instructions for this form indicate that it is important for "the transfer information be complete and accurate."  *Id.*

testified that the Manhattan Property was worth approximately $7,000,000 at the time of the disputed transfer. Pls.' R. 56.1 ¶ 42.

On May 30, 2014, Mamedova-Braz and the Decedent executed the operating agreements for both Redema and 191 Spring while they were in Vienna. *See* Pls.' Cntr. R. 56.1 ¶¶ 39, 47. No witnesses were present for the execution of these agreements. *Id.* The 191 Spring agreement was not dated May 30, 2014, but instead was dated retroactively "as of March 31, 2014," the same day as the transfer of the Manhattan Property. Meister Decl. Ex. 23 at G000269.[9] The operating agreement for 191 Spring indicates that Decedent and Mamedova-Braz had a "membership interest" of 51% and 49% respectively and that Mamedova-Braz was the "managing member." Pls.' R. 56.1 ¶¶ 22–23. The operating agreement for Redema sets forth that the Decedent and Mamedova-Braz each had a "membership interest" of 50% and that Mamedova-Braz was the "managing member." *Id.* ¶¶ 25–26.

Additionally, the Redema and 191 Spring operating agreements contained a right-of-survivorship provision, which provided in relevant part that "the [Decedent and Mamedova-Braz] covenant and agree that on the death of any Member, the membership interests of the deceased Member in the Company shall automatically transfer to the surviving Member." *Id.* ¶¶ 27–28; Meister Decl. Ex. 23, § 18; Meister Decl. Ex. 24, § 18. While the operating agreements allowed Decedent and Mamedova-Braz each to assign their respective membership interests in the LLC upon notice, Meister Decl. Ex. 23, § 17; Meister Decl. Ex. 24, § 17, it is undisputed that Decedent did not assign his membership interests prior to his death. Only in the

---

[9] On March 31, 2014, Memedova-Braz was in New York with I. Braz, executing the deed of transfer for the Manhattan Property. *See* Meister Decl. Ex. 21. Plaintiffs argue that Defendants have not produced the original copy of the operating agreement, and note this irregularity with the documentation, but do not seek any relief based on the failure to produce the original.

event of the simultaneous death of the two members would each member's interests "pass to their respective estates."  Meister Decl. Ex. 23, § 18; Meister Decl. Ex. 24, § 18.  The operating agreements also referenced "good and valuable consideration" received in exchange for the membership interests of the entity distributed to the members.  Meister Decl. Ex. 23 at G000269; Meister Decl. Ex. 24 at G000277.

On the date of the purported transfer of the Manhattan Property from Decedent to 191 Spring, Decedent held a 51% interest in 191 Spring, and Mamedova-Braz owned a 49% interest.  Pls.' R. 56.1 ¶ 48.  Thus, to the extent that the March 2014 transfer is valid, the practical effect of the transaction is that Decedent simply transferred 49% of the Manhattan Property to Mamedova-Braz, as the only asset ever owned by 191 Spring is the Manhattan Property.  Defs.' Cntr. 56.1 ¶ 43.[10]

On May 30, 2014, the same day that the operating agreements were executed in Austria, Mamedova-Braz, acting as Decedent's agent under the 2013 POA,[11] took steps intended to convey title of the Brooklyn Property to Defendant Redema through the execution of a bargain and sale deed (the "Brooklyn Deed").  Pls.' R. 56.1 ¶ 34.  This deed was signed by Mamedmova-Braz in her individual capacity and by Mamedova-Braz for Decedent in her representative capacity under the power of attorney, and notarized by I. Braz in New York.  Meister Decl. Ex.

---

[10] Defendants have confirmed that it is "undisputed" that the only "substantial asset owned by 191 Spring was and is the Manhattan Property and that it generates rental income."  *Id.*  Defendants also note, however, that 191 Spring also owns the company books and records and a portion of Redema Real Estate's bank account that is funded by the rental income from the Manhattan Property.  *Id.*

[11] While Plaintiffs concede that the power of attorney was valid for purposes of the instant motion, there is a dispute as to the date of execution of the transfer of the Brooklyn Property.  Defendants argue that the Brooklyn Deed contained a scrivener's error, incorrectly indicating that it had been notarized on May 30, 2014, when in fact it was notarized on March 31, 2014, and was not made effective until May 30, 2014 to give Mamedova-Braz and Decedent time to consider an offer they received to purchase the Brooklyn Property.  *See* Defs.' Cntr. R. 56.1 ¶ 34.  Although Plaintiffs point out these irregularities, *see* Pls.' Mem. Opp. at 13–14, they do not argue that these issues are dispositive of any legal issue the Court is presented with on summary judgment.

22 (the "Brooklyn Deed") at G000168.  The Brooklyn Deed transferred the Property to Redema for "Ten Dollars ($10) and other valuable consideration."  Meister Decl. Ex. 22 at G000167.  The parties now dispute whether this conveyance is valid.

Decedent died intestate on September 15, 2014, Pls.' R. 56.1 ¶¶ 2, 19, and the parties dispute whether at the time of his death, Decedent owned a 50% interest in the Brooklyn Property.  *See* Pls.' Cntr. R. 56.1 ¶ 33.  On October 22, 2014—five months after the purported transfer of title for the Brooklyn Property to Redema and one month after Decedent's death—the articles of organization for Redema were filed with the New York State Department of State, Division of Corporations.  Defs.' Cntr. R. 56.1 ¶ 35.  The bargain and sale deed for the Brooklyn Property was later recorded in the Office of the City Register of the City of New York on March 10, 2015—six months after Decedent's death.  *See* Meister Decl. Ex. 21 at G000157 ("Recorded/Filed 03-10-2015 14:54"); Defs.' Cntr. R. 56.1 ¶ 34.

The parties also dispute the effect of Decedent's death on his interest in the Manhattan Property.  Defendants claim that upon Decedent's death, pursuant to the right-of-survivorship provision, 191 Spring—of which Mamedova-Braz is now the sole owner—now owns the Manhattan Property outright.  Pls.' R. 56.1 ¶ 47; Defs.' Cntr. R. 56.1 ¶ 47.  Plaintiffs argue that upon Decedent's death, they should have become the record owners of 100% ownership interest in the Manhattan Property because the conveyance of Decedent's interest in the Property to 191 Spring was void.

## II.    PROCEDURAL BACKGROUND

Plaintiffs filed the instant action on May 18, 2015, and an Amended Complaint on August 5, 2015.  Doc. 1; Amended Complaint ("Am. Compl.") Doc. 12.  On August 26, 2015

Defendants filed an Answer to the Amended Complaint and counterclaim against Plaintiffs to quiet title to the Subject Properties. Doc. 20.

On February 3, 2017, the Court granted Plaintiffs leave to file a Second Amended Complaint and directed the parties to submit summary judgment motions regarding the First Amended Complaint. *See* 02/03/2017 ECF Entry. On February 21, 2017, the Court entered a consent order for the addition of Plaintiff B. Gass as the court-appointed representative of the estate of the Decedent (the "estate"). Doc. 37. Under the consent order, the parties have agreed to treat B. Gass as court-appointed representative of the estate and as a Plaintiff and Counterclaim-Defendant for purposes of the pending summary judgment motions, even though the estate is not a Plaintiff in the Amended Complaint. *Id.* at 2. On March 23, 2017, Plaintiffs filed the Second Amended Complaint. Doc. 50. The Second Amended Complaint adds the estate as an additional Plaintiff and requests monetary damages and other related relief; the stated claims for relief otherwise remain the same. *See id.*

Plaintiffs assert seven causes of action:

1. Fraudulent conveyance of the Subject Properties (against all Defendants except I. Braz);

2. Unjust enrichment (against all Defendants except I. Braz);

3. Equitable estoppel (against all Defendants except I. Braz);

4. Breach of fiduciary duty (against Defendant Memedova-Braz);

5. Aiding and abetting a breach of fiduciary duty (against Defendant I. Braz);

6. Action to compel the determination of any adverse claim to the Subject Properties under Article 15 of the New York Real Property Actions and Proceedings Law (against all Defendants except I. Braz); and

7. Declaratory judgment under 28 U.S.C. §§ 2201 and 2202 (against all Defendants except I. Braz).

Am. Compl. ¶¶ 35–63.  Defendants assert a counterclaim for quiet title to the Subject Properties. Doc. 20 at ¶¶ 71–106.

During the pendency of this action, the parties stipulated and agreed to sell the Brooklyn Property to a third party in February 2016.  *See* Memorandum of Law In Support of Plaintiffs' Motion for Partial Summary Judgment ("Pls.' Mem.") (Doc. 48) at 8.  The proceeds from the sale are being held in escrow pending resolution of this action.  *Id.*; *see also* Meister Decl. Ex. 26.

## III.    STANDARD OF REVIEW

To prevail on summary judgment, the movant must show that "there is no genuine dispute as to any material fact."  Fed. R. Civ. Pro. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  "A 'material' fact is one that might 'affect the outcome of the litigation under the governing law.'"  *Id.*  "The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010).  On a summary judgment motion, the district court "may not make credibility determinations or weigh the evidence . . . 'Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"  *Id.* at 545–46 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

"When confronted with cross-motions for summary judgment, the Court analyzes each motion separately, 'in each case construing the evidence in the light most favorable to the non-

moving party.'" *Peterson v. Kolodin*, No. 13 Civ. 793 (JSR), 2013 WL 5226114, at *1 (S.D.N.Y. Sept. 10, 2013) (quoting *Novella v. Westchester Cty.*, 661 F.3d 128, 139 (2d Cir. 2011)); *see also Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) ("[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration.") (citation omitted).  The Court is not required to resolve the case on summary judgment merely because all parties move for summary judgment.  *Morales*, 249 F.3d at 121.

## IV.    STANDING

As an initial matter, the Court must determine whether the individual plaintiffs have standing to bring this action.  *See Alliance For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)).  "Article III standing is a fundamental constitutional requirement that prevents courts from unnecessarily reaching legal issues in situations where the party to the litigation has failed to allege an injury which triggers an actual case or controversy that needs resolution by the courts."  *Butler v. Obama*, 814 F. Supp. 2d 230, 235 (E.D.N.Y. 2011).  Whether plaintiffs have standing is determined on the basis of the facts existing at the time the action was filed, *see United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980), and the Court "accept[s] as true all material allegations of the complaint" with respect to standing, "constru[ing] the complaint in favor of the complaining party."  *Warth v. Seldin*, 422 U.S. 490, 501 (1975).  To have standing, plaintiffs must show that:  (1) they have suffered an "injury in fact" that is both "concrete and particularized" and "actual and imminent, not conjectural or hypothetical"; (2) their injury is "fairly traceable" to defendants' actions; and (3) their injury would likely be

redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

At bottom, standing seeks to ensure that "[a] litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth,* 422 U.S. at 498. Thus, "[i]n all standing inquiries, the critical question is whether [a] plaintiff has 'alleged such a personal stake in the outcome of the controversy as to warrant his [or her] invocation of federal-court jurisdiction.'" *Prestige Builder & Mgmt. LLC v. Safeco Ins. Co. of Am.,* 896 F. Supp. 2d 198, 202 (E.D.N.Y. 2012) (quoting *Horne v. Flores,* 557 U.S. 433, 445 (2009)) (internal alterations omitted). In reference to standing, "[a] court should look to the law of the jurisdiction that created the property right to determine a claimant's legal interest." *United States v. 12636 Sunset Ave., Unit E-2, W. Ocean City, Md.*, 991 F. Supp. 2d 709, 711 (D. Md. 2014) (citation omitted).

Defendants argue that the only purported Plaintiff who has standing to bring this action is the estate of Decedent and that the action should be dismissed as to the three individual plaintiffs. Defs.' Mem. at 21.[12] Plaintiffs counter that Defendants' argument fails as a matter of law where the dispute involves not only a claim for damages and monetary relief, but also a claim for title to real property in an intestate estate. Pls.' Mem. at 24. Plaintiffs aver that upon a person's death, title to his real property is deemed to vest with his heirs or distributees as a matter of law, that an executor to an estate is not a necessary party to an action regarding the interest in the property, and therefore the individual plaintiffs have standing to maintain the

---

[12] There is no dispute that B. Gass is a proper Plaintiff, in his capacity as the court-appointed representative and Co-Administrator of the Decedent's intestate estate. The estate was added as an additional Plaintiff upon consent of counsel. Doc. 37.

action.  Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pls.' Mem. Opp.") (Doc. 54) at 24–25.

Here, the Amended Complaint alleges Plaintiffs have an interest in the Subject Properties through intestacy.  *See* Amended Complaint at ¶ 11 ("The Heirs stand to inherit the Decedent's worldwide property through intestacy . . ."); *see also* Second Amended Complaint (Doc. 50) at ¶ 12 ("Upon Decedent's death, the Heirs inherited the Decedent's worldwide properties through intestacy. . .").  New York law is clear that in such a situation, the asserted claims belong to the estate, not any beneficiaries in their individual capacity.  *Gaentner v. Benkovich*, 18 A.D.3d 424, 426, 795 N.Y.S.2d 246, 249 (2005) ("An executor, who is charged with the duty of recovering the property of the estate, must represent the legatees in the administration of the estate, and legatees thus have no independent right to maintain an independent cause of action for the recovery of property of the estate.") (citing *McQuaide v. Perot*, 223 N.Y. 75, 79, 119 N.E. 230, 231 (1918)); *Jackson v. Kessner*, 206 A.D.2d 123, 618 N.Y.S.2d 635 (1994); *Wierdsma v. Markwood Corp.*, 53 A.D.2d 581, 581–82, 384 N.Y.S.2d 836, 837 (1976)); *see also Hunter v. Pepsico, Inc.*, 631 F. App'x 445, 446 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 2022, 195 L. Ed. 2d 227 (2016), *reh'g denied*, 136 S. Ct. 2548, 195 L. Ed. 2d 884 (2016) (applying New York and Illinois law and finding that "under the laws of those states only the executor or administrator may sue on behalf of the estate") (citing *Jackson*, 206 A.D.2d at 123 ("It is elementary that the executors or administrators represent the legatees, creditors, and distributees in the administration of the estate; [and] that their duty is to recover the property of the estate . . .") (internal quotation marks omitted)).  Even if the only beneficiaries of an estate are plaintiffs in an action, these claims still belong exclusively to the estate.  *Jackson*, 206 A.D.2d at 127 ("The legatees and beneficiaries [of the estate] have no independent cause of action either in their own

right or in the right of the estate to recover estate property. . . . It is of no consequence that the plaintiff is the sole beneficiary of the estate.") (citation omitted).

Thus, the individual plaintiffs lack standing to sue, and the action will proceed with the estate as the sole plaintiff.[13]  For clarity's sake in this Opinion, however, the Court refers to "Plaintiffs" as a plural entity, as the motion papers were submitted by Plaintiffs.

## V.    DISCUSSION

Pending before the Court is Plaintiffs' motion for partial summary judgment on Plaintiffs' first (fraudulent conveyance), second (unjust enrichment), fourth (breach of fiduciary duty), sixth (quiet title to real property under Article 15 of RPAPL), and seventh (declaratory judgment regarding the parties' respective interests in the Subject Properties) claims for relief in the Amended Complaint.  Pls.' Mem.at 1.  Plaintiffs aver that the only remaining issues as to those counts is the amount of monetary damages they are entitled to recover as they argue that upon Decedent's death they should have become the record owners of 100% interest in the Manhattan Property and 50% interest in the Brooklyn Property.  *Id.* at 3, 5.

Defendants cross-move for summary judgment and seek an order dismissing the Amended Complaint in its entirety; awarding judgment in their favor on their counterclaim to quiet title to the Subject Properties; and directing the release of funds held in escrow associated with the sale of the Brooklyn Property.  Doc. 43 at 6.

---

[13] While it may be possible that the individual plaintiffs could have standing for claims other than those related to quiet title and declaratory judgment of the Subject Properties if they allege conduct that personally caused them to be injured, they have not done so here.  Plaintiffs' fraud, unjust enrichment, equitable estoppel, and breach of fiduciary duty claims are predicated on the conveyance of the Subject Properties and depend on whether title to the Subject Properties "passed to the three Heirs—*i.e.*, the Plaintiffs . . ."  Amended Complaint at ¶¶ 36–37, 39–40, 42–43, 47–48.  As to the aiding and abetting a breach of fiduciary duty claim against I. Braz, any damages Plaintiffs suffered as a result of any alleged breach again is determined through intestacy as the heirs' claim depends on their property rights as provided by the estate.  Thus, the individual plaintiffs lack standing for all claims asserted in this action.

## A. Count I – "Fraudulent Conveyance"

At the outset, the Court notes Plaintiffs' lack of clarity surrounding their first cause of action for "fraudulent conveyance." In describing their claim, Plaintiffs state that the claim, "based upon fraud, seeks relief for the improper, unauthorized, and fraudulent transfer" of the Subject Properties deceptively, without consideration, and in violation of the terms and fiduciary obligations of the POA. Pls.' Mem. Opp. at 22.[14] Plaintiff then cites to a 1958 New York Court of Appeals case outlining the elements of a claim for fraudulent representation. *Id.* (citing *Channel Master Corp. v. Aluminium Ltd. Sales, Inc.*, 4 N.Y.2d 403, 406-407 (1958)).

Defendants, also apparently uncertain as to Plaintiffs' allegations, reference Article 10 of New York's Debtor and Creditor Law (§§ 270–281), also known as the New York Fraudulent Conveyance Statute. *See* Doc. 43 at 9–10. In response, Plaintiffs explained that the use of the phrase "fraudulent conveyance" in the Amended Complaint was not a reference to the statute, but "merely another way of saying that the disputed conveyances, or transfers, were fraudulent." Pls.' Mem. Opp. at 22, n. 8. The Court therefore interprets Plaintiffs' first cause of action as a claim for common law fraud.

To recover damages for fraud under New York law, a plaintiff must prove: "'(1) a misrepresentation or a material omission of fact which was false and known to be false by defendant; (2) made for the purpose of inducing the other party to rely upon it; (3) justifiable reliance of the other party on the misrepresentation or material omission; and (4) injury.'" *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996)).

---

[14] To the extent that Plaintiff asserts fraud based on a purported breach of fiduciary obligations, those issues are properly analyzed in relation to Plaintiffs' cause of action for breach of fiduciary duty.

Here, Plaintiffs have not provided any evidence, beyond conclusory assertions of fraud, to prove the necessary elements of common law fraud—including any proof of a misrepresentation on which they relied to their detriment. Therefore, with respect to Count I, the Court GRANTS Defendants' motion and DENIES Plaintiffs' motion.

### B.    Equitable Estoppel

Equitable estoppel "is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Kosakow v. New Rochelle Radiology Assocs*., 274 F.3d 706, 725 (2d Cir. 2001). A plaintiff asserting equitable estoppel must show, on the part of the party being estopped: "(1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts." *In re Vebeliunas*, 332 F.3d 85, 93–94 (2d Cir. 2003). The plaintiff must also show: "(1) lack of knowledge and of the means of knowledge of the true facts; (2) reliance upon the conduct of the party to be estopped; and (3) prejudicial changes in [its] position[ ]." *Id.* at 94. New York courts have "consistently held that the doctrine of equitable estoppel cannot be invoked to create a right where one does not otherwise exist." *Wilson v. Hevesi*, 96 Civ. 1185 (SAS), 1998 WL 351861, at *6 (S.D.N.Y. June 29, 1998).

As discussed above, Plaintiffs have failed to provide any evidence, and therefore any issue of material fact, that Defendants have made any false representation or concealed any material facts. Notably, Plaintiffs have failed to respond at all to Defendants' argument that the claim for equitable estoppel must be dismissed, *see* Defs.' Mem. at 15–16. Accordingly, Defendants' motion for summary judgment on the equitable estoppel claim is GRANTED. Absent any evidence of a representation, the issues surrounding this property dispute are property analyzed under the remaining causes of action alleged by Plaintiffs.

16

**C.      Article 15 of New York's Real Property Actions and Proceedings Law and Declaratory Judgment**

In New York, the equitable action to quiet title has been largely replaced by proceedings under Article 15 of the RPAPL.  *See Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 416–17 (S.D.N.Y. 2010) (citing 2–24 Warren's Weed New York Real Property § 24.01).  "Whether a quiet title action is commenced in equity or under RPAPL Article 15, the result is almost the same—although RPAPL Article 15 is a statutory action, 'it has been described as a hybrid one in which the relief awarded is in large measure equitable in nature.'"  *Id.* (quoting *Dowd v. Ahr*, 168 A.D.2d 763, 563 N.Y.S.2d 917, 919 (3d Dep't 1990), *rev'd on other grounds*, 78 N.Y.2d 469, 577 N.Y.S.2d 198, 583 N.E.2d 911 (1991)).  Article 15 "is the culmination of a successive group of real property statutes and decisional law" that was "enacted in order to establish a 'clearing house' for a final determination of claims to real property."  *Hibiscus Harbor, Inc. v. Ebersold*, 53 Misc. 2d 868, 870–71, 280 N.Y.S.2d 44, 47–48 (Co. Ct. 1967).  A determination under Article 15 is in the nature of a declaratory judgment.  *Id.*

Plaintiffs also assert a separate cause of action for declaratory judgment under the Federal Declaratory Judgment Act (28 USC § 2201), which provides that federal courts may grant declaratory judgments in cases within their jurisdiction "whether or not further relief is or could be sought."  28 U.S.C.A. § 2201.  Because the same facts and arguments are dispositive of summary judgment with respect to declaratory judgment and RPAPL Article 15—namely, which parties maintain an interest in the Subject Properties—the Court considers these causes of action together.

RPAPL § 1501(1) provides that any person or estate that "claims an estate or interest in real property" may "maintain an action against any other person . . . to compel the determination of any claim adverse to that of the plaintiff which the defendant makes . . ."  N.Y. Real Prop.

Acts. Law § 1501. To prevail in an action under this section, "a party must demonstrate good title itself; it may not rely on the weakness of its adversary's title." *LaSala v. Terstiege*, 276 A.D.2d 529, 530, 713 N.Y.S.2d 767,768 (2d Dep't 2000) (citations omitted).[15] A judgment issued pursuant to RPAPL Article 15 must "declare the validity of any claim . . . established by any party," and may direct that an instrument purporting to create an interest deemed invalid be cancelled or reformed. *Barberan*, 706 F. Supp. 2d at 417 (citing N.Y. Real Prop. Acts. Law § 1521(1)); *see also TEG N.Y. LLC v. Ardenwood Estates, Inc.*, No. 03 Civ. 1721 (DGT), 2004 WL 626802, at *4 (E.D.N.Y. Mar. 30, 2004) (noting that in an RPAPL Article 15 action to compel the determination of a claim to real property, a court may determine the ownership interests in the property or reform a deed (citing § 1521(1))). The judgment must "also declare that any party whose claim to an estate or interest in the property has been judged invalid, and every person claiming under him . . . be forever barred from asserting such claim." *Barberan*, 706 F. Supp. 2d at 417 (internal quotation marks omitted) (quoting § 1521(1)); *see also O'Brien v. Town of Huntington*, 66 A.D.3d 160, 884 N.Y.S.2d 446, 451 (2d Dep't 2009).

Plaintiffs seek a judgment declaring that they are the owners of the Subject Properties, and Defendants counterclaim. The Court considers the Brooklyn Property and the Manhattan Property in turn.

### 1. The Brooklyn Property

Plaintiffs first argue that because the articles of organization for Redema were not filed until October 2014, any transfers to Redema prior to that time are void as a matter of law,

---

[15] A successful Article 15 claim must set forth facts showing: (i) the nature of the plaintiff's interest in the real property and the source of this interest; (ii) that the defendant claims an interest in the property adverse to that of the plaintiff, and the particular nature of the interest; (iii) whether any defendant is known or unknown, or incompetent; and (iv) whether all interested parties are named. N.Y. Real Prop. Acts. Law § 1515; *Guccione v. Estate of Guccione*, 84 A.D.3d 867, 923 N.Y.S.2d 591, 593 (2d Dep't 2011).

including any prior transfer of the Brooklyn Property. Pls.' Mem. at 6–8. Defendants contend that: (1) the Brooklyn Property transfer to Redema is not void; and (2) if it is void, Mamedova-Braz had full ownership of the property at the time of the transfer. Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Defs.' Mem. Opp.") (Doc. 51) at 2.

### a. The May 30, 2014 Brooklyn Property Transfer to Redema

It is undisputed that the articles of organization for Redema were not sent to the Department of State until October 2014—five months *after* Mamedova-Braz attempted to transfer title of the Brooklyn Property to Redema. Plaintiffs therefore argue that the conveyance was void as a matter of law because Redema did not exist. Defendants argue that the transfer was not void because Redema was a "de facto business organization" at the time of the transfer and because Plaintiffs are estopped from questioning the validity of Redema. Defs.' Mem. Opp. at 4.

Plaintiffs rely on *In re Hausman*, 13 N.Y.3d 408, 921 N.E.2d 191 (2009), as their primary support for the proposition that the deed of conveyance to Redema was void as a matter of law. In *Hausman*, as here, prior to the decedent's death, she executed a deed transferring ownership of a parcel of property to an LLC, but the LLC's articles of organization were not yet filed with the New York state Department of State. *Id.* at 410. New York Surrogate's Court held that the LLC operated as a valid de facto company prior to the filing of the articles of organization and thus the transfer of property to the LLC was valid. *Id.* The Appellate Division reversed, denied the petition and deemed the deed invalid. *Id.* at 411. It concluded that there was no "colorable attempt to comply with the statute governing the organization of limited liability companies" because no effort was made to file the articles of organization with the State prior to the

execution of the deed, and as such, no entity existed capable of taking title to the property. *Id.* at 412. The Court of Appeals of New York affirmed, explaining that "[u]nder very limited circumstances, courts may invoke the de facto corporation doctrine where there exists (1) a law under which the corporation might be organized, (2) an attempt to organize the corporation and (3) an exercise of corporate powers thereafter." *Id.* (citations omitted). With respect to the second prong, the court explained that the formation of a de facto company "requires a 'colorable attempt to comply with the statutes governing incorporation' prior to the exercise of corporate powers, including the filing requirement." *Id.* (citing *Kiamesha Dev. Corp. v. Guild Properties, Inc.*, 4 N.Y.2d 378, 388, 151 N.E.2d 214, 219 (1958)). "[W]here there has been an attempt in good faith to comply with the requirements of the law with respect to filing a certificate of incorporation and a certificate has been filed . . . and there has been use of the corporate name, the corporation will be deemed a corporation de facto." *Id.* at 413 (citations omitted). However, "the mere execution of a paper which is not filed and does not become a public record is insufficient." *Id.*

The *Hausman* court found that there was "no bona fide attempt to comply with the ministerial, yet essential, requirement of filing the articles of organization prior to the attempted conveyance" and that "merely executing articles of organization along with an operating agreement and nothing more is insufficient to meet the long-standing requirements of a de facto entity." *Id.* Thus, the Court held there was no entity in existence capable of receiving title to the real property and the purported conveyance was therefore void. *Id.*

Defendants' attempts to distinguish *Hausman* are unpersuasive. First, Defendants argue that Mamedova-Braz and Decedent attempted to organize the company and executed a Redema operating agreement. However, in *Hausman*, the LLC members also drafted an operating

agreement prior to filing, and the Court held this insufficient to deem the corporation a de facto entity. *Id.* at 411.

Defendants further argue that *Hausman* is distinguishable because there the LLC members did not take any steps to file the articles of organization until two weeks after the transfer of the property interest to the LLC, and here Defendants claim that there is evidence indicating that the Decedent and Mamedova-Braz directed their attorney, I. Braz, to file the necessary documents after they executed them. Defs.' Mem. Opp. at 5. In support of this position, Defendants point broadly to the deposition of Memedova-Braz, lines 158:18–164:9, and the deposition of I. Braz, lines 191:7–202:13, as evidence that Memedova-Braz and the Decedent instructed their attorney to file the necessary documents on May 30, 2014. *Id.* at 5. However, the pages cited by Defendants contain no specific assertion that the attorney was instructed to file the necessary materials immediately with the Department of State. The pages referenced merely outline the general details of the formation of Redema and the signing of the LLC papers. The closest statements contained within the referenced pages are Mamedova-Braz's testimony that she "rel[ied] on Ilya Braz to make the appropriate corporate filings," Doc. 44-3 at 158:18–159:5, and I. Braz's testimony that Memedova-Braz and the Decedent "informed [him] that it was acceptable to have the deed for the Brooklyn property recorded." Doc. 44-5 at 192:10–21. However, this is not the same as an express direction instructing the attorney to file the LLC organization documents on May 30, 2014. *See* Defs.' Mem. Opp. at 5.

Defendants also contend that Plaintiffs should be estopped from denying the validity of Redema because its creation conferred a benefit upon the Decedent and "it is the law in New York that a party deriving a benefit from the acts of a corporation is estopped from subsequently challenging the validity of that entity." Defs.' Mem. Opp. at 7; *see also Boslow Family Ltd.*

*Partnership v. Glickenhaus & Co.*, 7 N.Y.3d 664, 668-69 (2006) (noting the long-established doctrine that one who benefits from a contract may not later seek to avoid it by denying the existence of a party to that contract).

In *Hausman*, the Court of Appeals addressed and rejected the "incorporation by estoppel" arguments advanced by Defendants, holding, "there is no ground for the estoppel claim because there is no evidence that decedent acted inequitably or took unfair advantage . . . Indeed, there is no evidence that the decedent received any meaningful benefit from the transaction." *In re Hausman*, 13 N.Y.3d 408 at 413. Here, as in *Hausman*, there is no evidence to suggest that Decedent ever received any "meaningful benefit" from the transfer of the Brooklyn Property to Redema or that Decedent acted inequitably or took unfair advantage of Redema or Mamedova-Braz. Defendants argue that the Decedent did indeed derive a benefit from the formation of Redema and the transfer of the Brooklyn Property, namely that he received a 50% membership interest in Redema in exchange for the contribution of his interest in the Brooklyn Property. Defs.' Mem. Opp. at 7. However, at the time of the conveyance, Decedent and Mamedova-Braz each already owned a 50% interest in the property. Thus, according to Defendants, Decedent's alleged "benefit" was that he went from owning a 50% interest in the Property to owning a 50% interest in an LLC that owned the property. This is not a "meaningful benefit" in any sense of the term.

Moreover, the cases cited by Defendants are inapposite. In those cases, defendant corporations attempted to escape liability in suits commenced by parties who had contracted with them, by arguing that they did not legally exist at the time of the contract, even though the defendant entities had already obtained a benefit from the contracts. *See Puma Indus. Consult., Inc. v. Daal Assoc., Inc.*, 808 F.2d 982 (2d Cir. 1986); *Boslow Family Ltd. P'ship v. Glickenhaus*

& *Co.*, 7 N.Y.3d 664 860 N.E.2d 711 (2006); *Rubenstein v. Mayor*, 41 A.D.3d 826, 827, 839 N.Y.S.2d 170 (2007). Moreover, in *Boslow Family Ltd. Partnership*, the Court of Appeals held defendant was estopped from denying a partnership's validity because defendant "[did] not dispute that it derived a benefit from the agreement . . ." 7 N.Y.3d at 667; *see also 19 Steven Lane Corp. v. Kovar*, 34 Misc. 3d 1243(A), 950 N.Y.S.2d 609 (Dist. Ct. 2012) (reciting rationale for the doctrine of incorporation by estoppel and noting that an economic benefit from the relationship is required for the doctrine to apply). No such inequitable circumstances exist here, and as discussed above, no benefit was conferred on Decedent. Thus, Defendants are unable to overcome the Court of Appeals' ruling in *Hausman* that neither the de facto corporation doctrine nor incorporation by estoppel are applicable against a party where that party had not acted inequitably or took unfair advantage of the Plaintiffs and had not received any benefit from the transaction.

Therefore, the Court finds that consistent with *Hausman*, the May 30, 2014 conveyance of Decedent's interest in the Brooklyn Property to Redema was void as a matter of law.

### b. The 2004 Brooklyn Deed of Conveyance

Defendants next argue that even if the 2014 transfer to Redema was void as a matter of law, Mamedova-Braz would hold a 100% interest in the Brooklyn Property by a purported right of survivorship established in 2004 through a joint tenancy with Decedent. Defs.' Mem. Opp. at 2–3. Plaintiffs argue that Mamedova-Braz and Decedent took title to the Brooklyn Property in 2004 as tenants in common, each with a separate 50% interest, and without rights of survivorship. Doc. 58 at 8.

"The main difference between a joint tenancy and a tenancy in common is that a joint tenant also has a right of automatic inheritance known as 'survivorship.'" *United States v. Craft*,

535 U.S. 274, 280 (2002). "Upon the death of one joint tenant, that tenant's share in the property does not pass through will or the rules of intestate succession; rather, the remaining tenant or tenants automatically inherit it." *Id.*; *see also Melnick v. Press*, 809 F. Supp. 2d 43, 57 (E.D.N.Y. 2011) ("Under New York law, a joint tenancy is an estate held by two or more persons jointly, with equal rights to share in its enjoyment during their lives, and creating in each joint tenant a right of survivorship.") (citing *Goetz v. Slobey*, 76 A.D.3d 954, 908 N.Y.S.2d 237, 239 (2010) (internal quotation marks and citation omitted)).

Under New York law, "[a] disposition of property to two or more persons creates in them a tenancy in common, unless expressly declared to be a joint tenancy." N.Y. Est. Powers & Trusts Law § 6–2.2. Thus, "there is a heavy presumption that the absence of an express declaration that the grantees are joint tenants results in a tenancy in common and not a joint tenancy." *Matter of Estate of Vadney*, 193 A.D.2d 994, 994, 598 N.Y.S.2d 357, 358 (1993), *aff'd*, 83 N.Y.2d 885, 634 N.E.2d 976 (1994). This presumption may be rebutted, "but a correspondingly high order of evidence is required to overcome the presumption." *Id.*; *see also In re Estate of Flaherty*, 65 A.D.3d 745, 747, 883 N.Y.S.2d 812, 814 (2009) (holding express terms of deed declaring that parties are joint tenants with rights of survivorship are sufficient to overcome the presumption of a tenancy in common).

Here, the deed itself does not contain any express declaration that the Decedent and Mamedova-Braz intended to create a joint tenancy with a right of survivorship. *See* June 2004 Brooklyn Deed. Defendants have provided as evidence an affidavit of the lawyer who prepared the deed and transfer tax report, Carl Binder, stating that the silence in the deed as to joint ownership reflected his mistaken belief that Mamedova-Braz and the Decedent were married, and if they were married, the transfer would automatically create joint rights of survivorship

upon the death of the other.[16]  Affidavit of Carl. A. Binder ("Binder Aff.") (Doc. 44-10) ¶¶ 4–7.

Defendants also point to a contemporaneous transfer tax record from June 2004 that describes

the transaction as a sale "between relatives or former relatives."  Doc. 44-15.  Defendants thus

argue that because their ownership was *intended* as a joint tenancy and their lawyer mistakenly

believed they were married, the ownership should be deemed joint and thus attendant to this

ownership is a right of survivorship.  Defs.' Mem. Opp. at 3.

In support of their position, Defendants cite one case, *Matter of Estate of Vadney*, 193

A.D.2d 994, 598 N.Y.S.2d 357 (1993), *aff'd*, 83 N.Y.2d 885, 634 N.E.2d 976 (1994).  In *Estate*

*of Vadney*, petitioner sought to construe a deed conveying property to his mother and himself

that did not use words of survivorship as having created a joint tenancy.  *Id.*  The Surrogate's

Court dismissed the application, and petitioner appealed.  *Id.*  The Supreme Court held that that

the drafting attorney's admission of error in omitting words of survivorship and evidence that

petitioner's mother intended to create a joint tenancy provided necessary proof to overcome the

statutory presumption that the conveyance created tenancy in common.  *Id.* at 995.  Specifically,

the Supreme Court found that clear and convincing evidence demonstrated that a right of

survivorship was intended because the attorney, a witness, and contemporaneous written notes

evidenced the decedent's intention that the property pass to her son upon her death.  *Id.*  The

decedent had told her attorney that she wanted the property to pass to the petitioner upon her

---

[16] Whether the couple was married would have affected the rights of the tenants and the corresponding presumptions applied to the interpretation of the deed.  Under New York law, a tenancy by the entirety is "a tenancy whose salient characteristic is the unique relationship between a husband and his wife each of whom is seized of the whole and not of any undivided portion of the estate (per tout et non per my)."  *In re Heaney*, 453 B.R. 42, 46 (Bankr. E.D.N.Y. 2011) (citing *Reister v. Town Bd. of Fleming*, 18 N.Y.2d 92, 271 N.Y.S.2d 965, 218 N.E.2d 681, 682 (1966)).  "Accordingly, upon the death of a tenant by the entirety, the surviving spouse is entitled to a full fee simple ownership, not by virtue of a right of survivorship, but rather because the death merely results in the defeasance of the deceased spouse's interest.  Stated otherwise, the surviving spouse is considered to have owned the full estate from the time of the creation of the entirety estate."  *Id.* (citations omitted).

death because he was "the only one of her children who paid any attention to the property and paid attention to her." *Id.*

Here, the Court finds Defendants' argument and supporting evidence regarding Decedent's intent do not rise to the "high order of proof" presented in *Matter of Vadney*. *See, e.g., In re Estate of Nazarro*, 7 Misc. 3d 1001(A), 801 N.Y.S.2d 237 (Sur. 2005) (denying summary judgment and proceeding to trial where self-serving declarations regarding decedent's intent without further evidence did not provide sufficient proof of joint tenancy). Unlike in *Matter of Vadney*, Defendants have provided no contemporaneous written notes or proof of any admissible statements made at the time of the transfer apart from a lawyer's mistaken belief that Mamedova-Braz and Decedent intended to create a joint tenancy or right of survivorship.

Here, both parties have cross-moved for summary judgment and seek a declaration of their respective ownership of the Brooklyn Property. Considering that in each case all reasonable inferences must be drawn against the party whose motion is under consideration and that the Court may not make credibility determinations on this motion, summary judgment may not be granted to either party because factual issues exist with respect to whether an intent to create a joint tenancy existed.

\*   \*   \*

Although the Court finds that the May 30, 2014 conveyance of Decedent's interest in the Brooklyn Property to Redema was void as a matter of law, factual issues remain as to whether the 2004 Brooklyn Deed of Conveyance created a joint tenancy and therefore whether the Decedent owned a 50% or 0% interest in the Brooklyn Property at his death. Thus, the Court DENIES Plaintiffs' and Defendants' motions for summary judgment seeking quiet title and a declaratory judgment regarding their interest in the Property.

### 2. The Manhattan Property

Plaintiffs argue that the conveyance of the Manhattan Property to 191 Spring by Mamedova-Braz using the 2013 POA should be set aside as a matter of law as invalid because Decedent received no consideration for the transfer and Mamedova-Braz had no gifting authority under the POA.  Pls.' Mem. at 10.  Defendants concede that Mamedova-Braz "did not make any gifts" and instead aver that consideration is the legal basis for the transfer.  Defs.' Reply at 6–7. Ownership of the Manhattan Property thus turns on whether Decedent received consideration for his transfer of the Property to 191 Spring.  Defendants argue that Decedent received valid consideration for the contribution of his interest in the Manhattan Property in the form of 51% of the membership interest in 191 Spring.  Defs.' Mem. Opp. at 8–9.

Under New York law, to be valid, a contract must be supported by consideration. *Murray v. Northrop Grumman Info. Tech., Inc*., 444 F.3d 169, 178 (2d Cir. 2006).  Consideration to support an agreement exists where there is "either a benefit to the promisor or a detriment to the promisee."  *Hollander v. Lipman*, 65 A.D.3d 1086, 1087, 885 N.Y.S.2d 354 (N.Y. App. Div. 2009) (quoting *Weiner v. McGraw–Hill, Inc*., 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441, 445 (1982)).  Thus, New York law interprets the requirement of consideration broadly and "[e]ven consideration of the most minimal value is valid; the 'proverbial peppercorn' is sufficient."  *Gross Mach. Grp. v. M.V.*, No. 91 Civ. 0460 (JSM), 1993 WL 77326, at *1 (S.D.N.Y. Mar. 17, 1993) (citation omitted) ("Far from consideration needing to be coextensive or even proportionate, the value or measurability of the thing forborne or promised is not crucial so long as it is acceptable to the promisee.").

A large portion of Plaintiffs' motion papers are dedicated to disproving the theory that Mamedova-Braz's "sweat equity" in managing and running the Subject Properties constitutes the consideration for the Agreement.  However, Defendants concede that "[Mamedova-Braz's]

27

provision of sweat equity is unrelated to the consideration [Decedent] received for his interest in the Manhattan Property . . . " Defs.' Mem. Opp. at 8–9. Therefore, based on Defendants' concession, the Court looks to whether Decedent received any other form of consideration for the conveyance.

The following significant facts related to the Manhattan Property are undisputed:

- On February 24, 1999, the Decedent purchased the Manhattan Property for $1,275,000 and title was held solely in his name for 15 years from 1999 to 2014. Pls.' Cntr. R. 56.1 ¶¶ 14–15.

- On March 31, 2014, the articles of organization for 191 Spring LLC were filed with the New York State Department of State, Division of Corporations. Pls.' R. 56.1 ¶ 21. That same day, Mamedova-Braz, acting as Decedent's agent pursuant to the 2013 POA, signed a bargain and sale deed to convey Decedent's 100% interest in the Manhattan Property to 191 Spring. *Id.* ¶ 41; Rudolph Decl. Ex. 19.

- On the date of the purported transfer of the Manhattan Property, Decedent held a 51% interest in 191 Spring LLC, and Mamedova-Braz owned a 49% interest in the LLC. *See* Rudolph Decl. Ex. 10.

- Mamedova-Braz now is the sole member of 191 Spring due to the right of survivorship provision contained in the operating agreement. Pls.' R. 56.1 ¶ 47.

- The only asset ever owned by 191 Spring is the Manhattan Property, which generates substantial rental income. Defs.' Cntr. R. 56.1 ¶ 43.[17]

Thus, the effect of the March 2014 transfer is that Decedent's *sole* ownership of the Manhattan Property was transferred to 191 Spring, of which he held only 51% ownership. Defendants, without citing to any authority, argue that Decedent received valid consideration for the contribution of his sole interest in the Manhattan Property in the form of the partial interest in 191 Spring. Defs.' Mem. at 10; Defs.' Mem. Opp. at 8. Plaintiffs contend that the transfer

---

[17] Defendants have confirmed that it is "undisputed" that the only "substantial asset owned by 191 Spring was and is the Manhattan Property and that it generates rental income." *Id.* Defendants also notes, however, that 191 Spring also owns the company books and records and a portion of Redema Real Estate's bank account that is funded by the rental income from the Manhattan Property. *Id.* However, the books and records, although technically owned by the LLC, are not a substantial asset, and the bank account is funded by the rental income from the property, and thus connected to the real property asset itself.

simply deprived Decedent of approximately half the value of the Manhattan Property and was thus made without consideration. Pls.' Mem. Opp. at 14–15.

Although the 191 Spring operating agreement references "good and valuable consideration" received in exchange for the membership interests in the entity, *see* Meister Decl. Ex. 23 at G000269, the Court finds no evidence that any such consideration was provided to Decedent. Defendants' argument defies both common sense and the law. The only asset owned by 191 Spring was the Manhattan Property—and therefore Decedent's transfer of his interests in the property was neither a benefit to Decedent or a detriment to Mamedova-Braz. Thus, while it is inappropriate for the Court to measure whether consideration is proportionate or suitable, Defendants have failed to provide any evidence that consideration existed in the form of membership shares in 191 Spring because Decedent gained no benefit from the transaction.

The Court notes, however, that the Manhattan Deed states that the Manhattan Property was transferred to 191 Spring for "Ten Dollars ($10) and other valuable consideration." Rudolph Decl. Ex. 19. Plaintiffs argue that in and of itself, this statement does not mean actual consideration was given to Decedent in exchange for his interest in the transferred real property absent evidence that consideration was given. Pls.' Cntr. R. 56.1 ¶ 32. Furthermore, other evidence rebuts that any consideration was received. According to the Form TP-584 "Combined Real Estate Transfer Tax Return" from the New York State Department of Taxation and Finance that was signed by Mamedova-Braz on January 22, 2015, as both grantor and grantee, there was "no consideration" and "0.00 consideration" for the Manhattan Property Conveyance. Rudolph Decl. Ex. 20 at Plaintiff_00442. Moreover, according to the Form RP-5217NYC "Real Property Transfer Report" from the State of New York, State Board of Real Property Services that was signed by Mamedova-Braz on the same day, the "full sale price" for the Manhattan Property

Conveyance was $0.00. Rudolph Decl. Ex. 21 at 4. Importantly, both of these documents that indicate there was no consideration were signed by Mamedova-Braz herself. Thus, based on this contradictory evidence, factual issues exist as to whether $10 was given as consideration for the transfer of the Manhattan Property. As such, summary judgment in favor of either party is inappropriate at this stage.

Defendants also argue that the transfer of the two Subject Properties to two separate LLCs should be viewed together—and thus that Decedent's receipt of a 50% interest in Redema also served as consideration for the transfer of his property to 191 Spring. *See* Defs.' Mem. at 9–11. Specifically, Plaintiffs claim that Decedent "also received a 50% interest in Redema, though that property was, theretofore, owned solely by [Mamedova-Braz]. . ." Defs.' Mem. Opp. at 9. However, the evidence demonstrates that at the time of the 2014 transfer to Redema, Mamedova-Braz was not the sole owner of the Brooklyn Property—rather, Mamedova-Braz had transferred a 50% interest in the Brooklyn Property to Decedent a decade earlier in June 2004 and Decedent held that interest in his name until the date of the transfers in 2014. *See* June 2004 Brooklyn Deed. Accordingly, it is disingenuous for Defendants to represent to this Court that the 2014 transfers were supported by consideration because the Brooklyn Property was "theretofore owned solely by" Mamedova-Braz.

Thus, the Court DENIES Plaintiffs' and Defendants' motions for summary judgment seeking quiet title and a declaratory judgment regarding their interest in the Manhattan Property.

### D.    Unjust Enrichment

To state a claim for unjust enrichment under New York law, a plaintiff must provide proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover. *Briarpatch Ltd. v. Phx. Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004), *cert. denied*, 544 U.S.

949 (2005). "The 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another.'" *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (quoting *City of Syracuse v. R.A.C Holding, Inc.*, 258 A.D.2d 905, 685 N.Y.S.2d 381, 381 (4th Dep't 1999)).

Defendants argue that Plaintiffs' claims for unjust enrichment are unsupported by any evidence, and as such, there are no genuine material issues of fact precluding summary judgment in their favor. Plaintiffs respond that that it would offend "equity and good conscience" to allow Defendants to retain ownerships interests in the Manhattan Property or the entire proceeds of the sale of the Brooklyn Property to the detriment of Decedent's estate. Pls.' Mem. Opp. at 23. For the same reasons as discussed above, factual issues remain as to the legal ownership of the Subject Properties, and thus at this time, it is impossible to determine whether Defendants were unjustly enriched at Plaintiffs' expense. Thus, the Court DENIES both Plaintiffs' and Defendants' cross-motions for summary judgment on the unjust enrichment claim.

### E.      Breach of Fiduciary Duty

Under New York law, the elements of a claim for breach of fiduciary duty are: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) (citations omitted). "A fiduciary relationship exists under New York law 'when one . . . is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" *Childers v. New York and Presbyterian Hosp.*, 36 F. Supp. 3d 292 (S.D.N.Y.2014) (citing *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 599 (2d Cir. 1991) (other citations omitted)). Plaintiffs assert a claim for breach of fiduciary duty against Mamedova-Braz and a claim for aiding and abetting a breach of fiduciary duty against I. Braz.

### a) Against Mamedova-Braz

It is undisputed that Mamedova-Braz held the power of attorney for Decedent and that this created a fiduciary relationship. *See* N.Y. Gen. Oblig. Law § 5–1505 (discussing fiduciary duties of agent holding power of attorney). New York law requires a fiduciary "to act according to any instructions from the principal or, where there are no instructions, in the best interest of the principal, and to avoid conflicts of interest." *Id.*

Plaintiff argues that Mamedova-Braz breached her fiduciary duty toward Decedent, as his agent under a Power of Attorney, when she used that Power of Attorney to benefit herself, and in a manner that was inconsistent with Decedent's best interests. Pls.' Mem. Opp. at 23–24. Specifically, Plaintiffs argue that the power of attorney did not authorize Mamedova-Braz to make gifts, let alone gifts to herself, and therefore she breached her duty to Decedent as his agent when "she gifted to herself "Decedent's ownership interest in the Manhattan Property, without the Decedent receiving any money or anything else of value in exchange." Pls.' Mem. at 12–13. For the reasons discussed above, Mamedova-Braz disclaims that she received the Manhattan Property as a gift, and factual issues remain with respect to whether Decedent received consideration for the transfer of the that Property, and therefore the Court is unable to determine on summary judgment whether Mamdeova-Braz breached any duty to Decedent through the transfer to Spring 191. Thus, the Court DENIES Plaintiffs' and Defendants' motions for summary judgment on the breach of fiduciary claim with respect to Manhattan Property.

As to the Brooklyn Property, Plaintiffs also state that the transfer was done for Mamedova-Braz's own benefit and was in breach of her duties, but that "Court need not address that transfer any further" because "that [transfer] attempt was void for the reasons discussed, *supra* . . ." *Id.* For the reasons discussed above, the Court finds that the May 30, 2014 conveyance of Decedent's interest in the Brooklyn Property to Redema was void as a matter of

law.  Based on Plaintiffs' concession that if the transfer was void, the Court need not address any alleged breach, the Court DENIES Plaintiffs' motion and GRANTS Defendants' motion with respect to the Brooklyn Property and dismisses any claim against Mamedova-Braz for breach in relation to the Brooklyn Property only.

     **b)**       **Against I. Braz**

"Under New York law, a claim for aiding and abetting a breach of fiduciary duty requires a primary violation-that is, an underlying . . . breach of fiduciary duty." *Fairfield Fin. Mortg. Grp., Inc. v. Luca*, No. 06 Civ. 5962 (JS), 2014 WL 4638950, at *6 (E.D.N.Y. Sept. 16, 2014) (internal quotation marks and citation omitted).  For the reasons discussed above, factual issues remain as to whether Mamedova-Braz breached any fiduciary duty; thus, factual issues also remain as to whether I. Braz aided in any underlying breach.  As such, Defendants' motion with respect to the aiding and abetting a breach of fiduciary duty claim against I. Braz is DENIED.

## VI.    CONCLUSION

For the reasons stated above:

- Defendants' motion with respect to the standing of the individual plaintiffs is GRANTED because the individual plaintiffs lack standing in this action.

- Defendants' motion with respect to the fraudulent conveyance claim is GRANTED and Plaintiffs' motion with respect to fraudulent conveyance is DENIED. The fraudulent conveyance claim is hereby dismissed.

- Defendants' motion with respect to the equitable estoppel claim is GRANTED and the equitable estoppel claim is hereby dismissed.

- Plaintiffs' and Defendants' motions with respect to: (1) quiet title under Article 15; (2) declaratory relief; and (3) unjust enrichment are DENIED with respect to both of the Subject Properties.

- With respect to the breach of fiduciary duty claim against Mamedova-Braz, Plaintiffs' and Defendants' motions are both DENIED in part and GRANTED in part.

- Defendants' motion with respect to the breach of fiduciary duty claim against I. Braz is DENIED.

The Clerk of the Court is respectfully directed to terminate the motions, Docs. 41, 42, and 61.

It is SO ORDERED.

Dated:    August 18, 2017
        New York, New York

Edgardo Ramos, U.S.D.J.